UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBERT ERBY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 03-1159 (PLF) |
| UNITED STATES OF AMERICA, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

OPINION

This matter is before the Court on the United States' motion to dismiss this case for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiff's amended complaint asserts a claim of negligence against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, arising from a motor vehicle accident between a United States Postal Service ("USPS") truck driven by Randolph Peoples and a Washington Metropolitan Area Transit Authority ("WMATA") bus driven by plaintiff Robert Erby on April 16, 2001. The sole issue to be resolved is the factual question of whether Peoples (who also has been joined as a defendant) was acting within the scope of his employment with the USPS when he was involved in the accident. The Court held an evidentiary hearing on this factual issue on January 20, 2006. Because the Court finds that plaintiff has not shown by a preponderance of the evidence that Mr. Peoples was acting within the scope of his employment, it grants defendant's motion to dismiss.

I.  BACKGROUND

Robert Erby is a bus driver for the Washington Metropolitan Area Transit Authority.  According to the allegations in the complaint, at approximately noon on April 16, 2001, a postal truck driven by Randolph Peoples negligently struck Mr. Erby's bus from behind, causing Erby substantial injuries.  The accident occurred at the intersection of Massachusetts Avenue and 17th Street, Southeast, in Washington, D.C.  See Amended Complaint ("Am. Compl.") ¶¶ 7-9.[1]  On May 30, 2003, after exhausting his administrative remedies, Erby filed this action against the United States, asserting a single claim of negligence under the FTCA.  On October 7, 2003, plaintiff amended his complaint to add a pendent claim of common law negligence against Mr. Peoples, who was joined as a defendant.[2]

The United States filed a motion to dismiss the complaint for lack of subject matter jurisdiction, arguing that Mr. Peoples was not acting within the scope of his employment at the time of the accident, and that the Court therefore lacks subject matter jurisdiction to hear this action under 28 U.S.C. § 1346(b).[3]  At plaintiff's request, the Court allowed limited discovery on the factual question of whether Peoples was acting within the scope of his

---

[1]  The amended complaint states that the accident occurred at 17th Street and Massachusetts, Avenue, Northwest, Washington, D.C.  See Am. Compl. ¶ 7.  This appears, however, to be a typographical error, as the parties agree that the evidence clearly shows the accident to have taken place in Southeast Washington.  See Ex. G to Motion to Dismiss Amended Complaint.

[2]  Mr. Peoples failed to respond to the complaint after being served with process, and on April 28, 2005, the Court entered a default judgment against Mr. Peoples on the issue of his liability.

[3]  After plaintiff amended his complaint to join Randolph Peoples as a defendant, the government filed an amended motion to dismiss.  See Defendant's Motion to Dismiss Amended Complaint ("Mot. Dism.").

employment. Then, on January 20, 2006, the Court held an evidentiary hearing, at which the Court heard the testimony of several witnesses, including Mr. Peoples's mother, Ethel Peoples, and several of Mr. Peoples's former supervisors at the USPS: Laschell Douglas, Mary Ann Penny Jefferson, Clifford Rhinehart, Cecil Harriston, and Sherrod Stanard.[4]  The parties were given until March 13, 2006 to file additional briefs regarding the proper burden of proof and standard of review for a challenge to subject matter jurisdiction under Rule 12(b)(1), as well as additional evidence on the issue of scope of employment.

## II.  DISCUSSION

### A.  Standard of Review for Motion to Dismiss Under Rule 12(b)(1)

When a defendant has filed a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Research Air, Inc. v. Norton, 2006 U.S. Dist. Lexis 10784, *14-*15 (D.D.C. Mar. 1, 2006); Felter v. Norton, 412 F. Supp. 2d 118, 2006 U.S. Dist. Lexis 2642, *5 (D.D.C. 2006); Primax Recoveries, Inc. v. Lee, 260 F. Supp. 2d 43, 47 & n.3 (D.D.C. 2003).  A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure may raise either a "facial" or a "factual" challenge to the non-moving party's claim of subject matter jurisdiction.  See I.T. Consultants v. Pakistan, 351 F.3d 1184, 1188 (D.C. Cir. 2003); Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001); Flynn v. Ohio Bldg. Restoration, 260 F. Supp. 2d 156, 162

---

[4]  Mr. Peoples is no longer employed by the Postal Service.

(D.D.C. 2003); 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1350 & n.43.

If a defendant mounts a "facial" challenge to the legal sufficiency of the plaintiff's jurisdictional allegations, the court must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party. See I.T. Consultants v. Pakistan, 351 F.3d at 1188; Valentin v. Hospital Bella Vista, 254 F.3d at 363 (in resolving facial challenge, "the court must credit the plaintiff's well-pleaded factual allegations . . . draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly"); Flynn v. Ohio Bldg. Restoration, 260 F. Supp. 2d at 162 (quoting Loughlin v. United States, 230 F. Supp. 2d 26, 35 (D.D.C. 2003)). If, on the other hand, the movant challenges the factual basis for jurisdiction, "the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant," but "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." Phoenix Consulting Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) (analyzing subject matter jurisdiction under Foreign Sovereign Immunities Act); see also Walker v. Jones, 733 F.2d 923, 934-35 (D.C. Cir. 1984) (MacKinnon, J., dissenting in part and concurring in part); 5B FEDERAL PRACTICE & PROCEDURE § 1350 & n. 51.

On a factual challenge, "the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Valentin v. Hospital Bella Vista, 254 F.3d at 363; see Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n, 149 F.3d 679, 685 (7th

Cir. 1998) (presumption of correctness accorded to complaint's allegations with respect to jurisdiction "falls away" once defendant proffers evidence that calls the court's jurisdiction into question). In resolving the question of jurisdiction, the court may consider materials beyond the pleadings. "[W]here necessary, the court therefore may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. National Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).[5]

### B.  Scope of Employment under the FTCA

The Federal Tort Claims Act is a limited waiver of the United States' sovereign immunity from suit that gives federal district courts jurisdiction over civil damages actions against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]"  28 U.S.C. § 1346(b).  Such a waiver of sovereign immunity must be "strictly construed, in terms of its scope, in favor of the sovereign."  Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003) (quoting Dep't of Army

---

[5]  Plaintiff argues that "once the plaintiff provides persuasive evidence contradicting the government's position on the scope of employment, that the burden then shifts to the government to provide evidence to support its contention." See Plaintiff's Opposition to Defendant United States Motion to Dismiss for Lack of Jurisdiction Pursuant to Rule 12(b)(1) ("Opp.") at 5.  Plaintiff is incorrect.  The cases cited by plaintiff in support of this proposition are inapposite because they all pertain to situations in which the government is asserting jurisdiction under the FTCA, by certifying, pursuant to 28 U.S.C. § 2679(d)(2), that a federal employee sued on common law tort claims was acting within the scope of his employment when the allegedly tortious conduct occurred.  See Borneman v. United States, 213 F.3d 819, 825 (4th Cir. 2000); Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997); see also Bancoult v. McNamara, 370 F. Supp. 2d 1, 7 (D.D.C. 2004).

v. Blue Fox, Inc., 525 U.S. 255, 261 (1999)).  A party bringing suit against the United States therefore bears the burden of proving that the government has unequivocally waived its immunity.  See Tri-State Hosp. Supply Corp. v. United States, 341 F.3d at 575.  The burden is thus on a party asserting jurisdiction under the FTCA to demonstrate that the conduct giving rise to the action occurred within the scope of the government employee's employment.  See 28 U.S.C. § 1346(b).

In actions under the FTCA, whether a government employee was acting within the scope of his employment when a tort was committed is a question governed by state tort law. See Stokes v. Cross, 327 F.3d 1210, 1214 (D.C. Cir. 2003) ; Hadden v. United States, 68 F.3d 1420, 1423 (D.C. Cir. 1995) (citing Kimbro v. Velten, 30 F.3d 1501, 1506 (D.C. Cir. 1994)). The District of Columbia has adopted the Restatement (Second) of Agency's approach to the issue, which provides that an employee's conduct is within the scope of employment only if:

> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master; and
>
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

RESTATEMENT (SECOND) OF AGENCY § 228 (1958); see also Haddon v. United States, 68 F.3d at 1423-24 (citing Mosely v. Second New St. Paul Baptist Church, 534 A.2d 346, 348 n.4 (D.C. 1987)).[6]

---

[6] Both parties agree that the law of the District of Columbia governs this action.

The defendant argues that its employee, Randolph Peoples, was not acting within the scope of his employment at the time of the accident because he was not operating "substantially within the authorized time and space limits" of his job when the accident occurred. According to defendant, Peoples was authorized at the time of the accident to perform duties only in Postal Zone 6, which is located along K Street in Northwest Washington, several miles from the site of the accident in Southeast D.C. It is defendant's contention that Mr. Peoples "deviated from his assigned mail route on K Street to perform a purely *personal* and unauthorized function – to go to his home in Southeast Washington." Mot. Dism. at 7 (emphasis in original).

In response, plaintiff points to deposition testimony from Mr. Peoples stating that "he had delivered some mail and was heading back to his place of business when the collision occurred," and denying that he had taken his postal truck home for lunch on the day of the accident. Opp. at 3. Plaintiff also cites the testimony of Ethel Peoples, Mr. Peoples's mother, at the evidentiary hearing that she had never seen his postal truck at her home (where Mr. Peoples apparently resided around the time of the accident), and that she did not recall ever seeing her son come home from work for lunch. See Opp. at 3; 1/20/06 Transcr. at 15:9-17.[7] Beyond these two citations, however, plaintiff has adduced no evidence (and articulated no argument) in favor of his factual contention, despite having had ample opportunity to do so.

---

[7] Mrs. Peoples could not recall whether her son had eaten lunch at home on the date of the accident, only that he did not as a general rule eat lunch at home. See 1/20/06 Transcr. at 15:16-17.

7

*C.  The Evidence*

The Court finds, on the basis of the evidence presented at the evidentiary hearing and through depositions, that plaintiff has not shown by a preponderance of the evidence that Mr. Peoples was acting within the authorized time and space limitations of his employment when the accident occurred.

The government has introduced evidence and testimony showing that Mr. Peoples's primary job responsibility around the date of the accident was the delivery of mail "relays" to Postal Zone 6, in Northwest D.C., and that deviations from that route were not authorized.  See, e.g., Ex. A to Mot. Dism., List of Zone 6 Relays; Ex. C to Mot. Dism., Letter of Instructions to Postal Carriers; 1/20/06 Transcr. at 23:6-8, 33:22-35:19 (testimony of Laschell Douglas); 54:22-55:12 (testimony of Clifford Rhinehart).  This evidence, however, does not by itself completely foreclose the possibility that Mr. Peoples might have had official duties in Zone 3 on the date of the accident.

Far more important to the government's case is the Motor Vehicle Accident Report prepared by Mr. Peoples and his supervisor, Clifford Rhinehart, on the day of the accident and/or over the next few days.  See Gov't Ex. 6, Motor Vehicle Accident Report; 1/20/06 Transcr. at 69:18-71:10 (testimony of Clifford Rhinehart).  Plaintiff does not challenge the authenticity of this document, which reports that when the accident occurred Mr. Peoples had made a substantial deviation from his authorized route, which originated at the Postal Service facility at 900 Brentwood Road in Northeast D.C., and was to end at the USPS facility on Ward Place in Northwest Washington.  See Gov't Ex. 6, Motor Vehicle Accident Report.  The map of the District of Columbia offered in evidence by the defendant shows that while Ward Place is

several miles west-southwest of Brentwood Road, the accident took place several miles south-southeast of Brentwood Road.  See Ex. G to Mot. Dism.  The Accident Report further states that there was "no authority given" for the trip to Southeast, that Mr. Peoples "had no instructions to deviate from his regularly scheduled route," and that on the day of the accident, Mr. Peoples "stated that he had gone home" while en route from Brentwood Road to Ward Place.  See Gov't Ex. 6, Motor Vehicle Accident Report; see also Ex. E to Mot. Dism, Declaration of Clifford Rhinehart (Sept. 23, 2003) ¶ 6 ("Mr. Peoples informed me that prior to the motor vehicle accident, he had driven the Postal Service vehicle to his personal residence.").  At the evidentiary hearing, Mr. Rhinehart further testified that Mr. Peoples had told him on the day of the accident that Peoples had gone home to get his medicine.  See 1/20/06 Transcr. at 56:18-57:6.[8]

In his deposition testimony, Mr. Peoples stated that he had not gone home on the day of the accident, but rather that he had been delivering express mail in Southeast D.C. that morning.  See Gov't Ex. 7, Deposition of Randolph Peoples (July 18, 2005) ("Peoples Depo.") at 13:21-14:8, 14:20-22.  The Court, however, gives little weight to Mr. Peoples's testimony on this issue.  Peoples testified at his deposition that, because of persistent alcohol and cocaine abuse, he suffers short- and long-term memory loss.  See Peoples Depo. at 32:12-14; 48:12-17; 49:2-7.  Peoples further testified specifically that he could not recall at the time of his deposition whether he had delivered mail to Zone 3 on the date of the accident.  See Peoples Depo. at 59:6-60:1.  Because of Mr. Peoples's admittedly faulty memory, the Court finds his testimony as to the events of April 16, 2001 unreliable.

---

[8]    Ms. Jefferson also testified that Peoples told her that he was in Zone 3 because he was going to his mother's house to get his medicine.  See 1/20/06 Transcr. at 45:23-46:4.

Mr. Peoples's mother, Ethel Peoples, was a more credible witness. Her testimony at the evidentiary hearing, however, was not inconsistent with the defendant's factual contentions. Mrs. Peoples stated only that her son did not routinely eat lunch at her home, and that she could not recall him having brought a postal truck to her house. See 1/20/06 Transcr. at 15:3-5, 9-17.[9] There is no inconsistency between this testimony and the testimony of Mr. Rhinehart that Randolph Peoples had gone home on April 16, 2001 not to have lunch, but to retrieve his medicine. Mrs. Peoples's testimony therefore does little to further plaintiff's case.

At the evidentiary hearing, several USPS employees testified as to Mr. Peoples's job responsibilities on the date of the accident. Although plaintiff's counsel has never articulated an argument to this effect in any filing with the Court, through his examination of the government's witnesses plaintiff attempted to raise the possibility that Mr. Peoples's duties were limited to the delivery of mail to Postal Zone 6 only in the afternoons, and that on some mornings he might also have been called upon to deliver express mail to other postal zones, including Zone 3.[10] This is, however, little more than speculation, as no evidence was introduced which tended to show that Mr. Peoples had delivered mail in Zone 3 on the date of the accident.[11] Moreover,

---

[9] Mrs. Peoples further testified that she could (understandably) not recall what had actually transpired on April 16, 2001, and had no idea if her son ate lunch at home on that date. See 1/20/06 Transcr. at 15:14-17.

[10] Mr. Peoples appears at some point after the accident to have alleged that he had in fact been delivering express mail in Zone 3 on the day of the accident. See 1/20/06 Transcr. at 49:18-22.

[11] The government's witnesses offered contradictory testimony as to whether "relay drivers" such as Mr. Peoples were ever called upon to handle express mail around the time of the accident. Compare 1/20/06 Transcr. at 25:9-16 (testimony of Laschell Douglas) with 1/20/06 Transcr. at 80:10-22 (testimony of Sherrod Stanard). Mr. Sherrod Standard, manager of collections for USPS Expedited Mail Unit on the date of the accident, did testify that only on

Mr. Rhinehart, who with plaintiff prepared the Motor Vehicle Accident Report, testified that Mr. Peoples had never told him that he had been delivering express mail in Zone 3 on the date of the accident. See 1/20/06 Transcr. at 57:7-15.

Unfortunately, any documentary evidence that might have shown conclusively whether Peoples had made such deliveries appears to have been lost when the Brentwood facility was quarantined for suspicion of anthrax contamination in October 2001. See 1/20/06 Transcr. at 28:16-29:4 (testimony of Laschell Douglas); 49:12-16 (testimony of Clifford Rhinehart). In view of the paucity of evidence that Mr. Peoples was acting in the scope of his employment at the time of the accident and the substantial evidence to the contrary (including the contemporaneous documentary evidence that does exist), there is no basis for the Court to infer that the missing evidence would support plaintiff's contention rather than defendant's.

### III.  CONCLUSION

Based on the government's evidence that Mr. Peoples had deviated from his assigned route to go home on the morning of April 16, 2001, and the nearly total lack of credible contradictory evidence, the Court finds that plaintiff has not shown by a preponderance of the evidence that Mr. Peoples was "substantially within the authorized time and space limits" of his job, and therefore acting within the scope of his employment, when the accident giving rise to this litigation occurred. See RESTATEMENT (SECOND) OF AGENCY § 228. Accordingly, the Court

---

"rare" occasions was express mail delivered from the Brentwood Road facility, where Mr. Peoples's April 16, 2001 trip originated. See 1/20/06 Transcr. at 84:19-85:2.

concludes that there is no subject matter jurisdiction under the Federal Tort Claims Act, see 28 U.S.C. § 1346(b). The Court therefore will grant defendant's motion to dismiss. An Order and Judgment to that effect will issue this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: March 31, 2006